BEAUCHAMP, Appellant,

v.

COMPUSERVE, INCORPORATED, Appellee.

[Cite as *Beauchamp v. CompuServe, Inc.* (1998), 126 Ohio App.3d 17.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 97APE08–1093.

Decided April 9, 1998.

18

BOWMAN, Judge.

Plaintiff-appellant Joseph Beauchamp was employed by defendant-appellee, CompuServe, Inc., from 1977 until his employment was terminated in June 1995. Appellant filed a complaint alleging wrongful termination, employment age discrimination, and employment handicap discrimination. Appellant alleged that appellee took four adverse employment actions against him because he suffered from depression and because he was more than forty years old.

Appellee filed a motion for summary judgment alleging that it had a legitimate, nondiscriminatory reason for discharging appellant. The motion for summary judgment was supported by an affidavit and excerpts of deposition pages, and later the complete depositions were filed with the court. The trial court granted the motion for summary judgment, finding that appellant did not present a prima facie case of handicap discrimination and, even if he had, appellee presented a legitimate, nondiscriminatory reason for the adverse job actions. The trial court also found that appellant presented no evidence of age discrimination beyond the fact that his replacement was less than forty years old at the time.

Appellant filed a notice of appeal and raises the following assignments of error:

"1. The trial court erred in holding to the effect that an employer is not liable for discriminating against an employee because of the employee's handicap if the employee is qualified for and can and does perform all the duties of his job.

"2. The trial court erred in holding that a *prima facie* case of age discrimination was not demonstrated by plaintiff and also by the evidence considered by the court if construed in his favor.

"3. The trial court erred in failing to find that there are at least genuine issues of material fact as to whether defendant CompuServe, Inc. discriminated against plaintiff Beauchamp because of his age with respect to his employment.

"4. The trial court erred in failing to find that there are at least genuine issues of material fact as to whether defendant CompuServe, Inc. discriminated against plaintiff Beauchamp because of his handicap with respect to his employment.

"5. The trial court erred in failing to find that there are at least genuine issues of material fact as to whether defendant CompuServe, Inc. discharged defendant [*sic*] Joseph Beauchamp without just cause contrary to R.C. 4112.14.

"6. The trial court erred in considering depositions that were not timely or properly filed by defendant CompuServe, Inc.

"7. The trial court erred in striking plaintiff's affidavit especially without affording plaintiff an opportunity to file his affidavit in the form desired by the trial court and in failing to consider the 'corrected' affidavit that was substituted for the stricken affidavit prior to the trial court's decision.

"8. The trial court erred in sustaining defendant's motion for summary judgment and granting summary judgment to defendant."

By the first and fourth assignments of error, appellant contends that the trial court erred in granting appellee's summary judgment motion concerning his claim of handicap discrimination. In order to grant a motion for summary judgment, the court must find that, construing the evidence most strongly in favor of the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. A genuine issue of material fact exists unless it is clear that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion is made. *Williams v. First United Church of Christ* (1974), 37 Ohio St.2d 150, 151, 66 O.O.2d 311, 311–312, 309 N.E.2d 924, 925.

In *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264, the Supreme Court of Ohio stated that the party moving for summary judgment on the ground that the nonmoving party cannot prove its case has the initial burden of

informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claim. Once the moving party satisfies this initial burden, the nonmoving party has a reciprocal burden to set forth specific facts showing there is a genuine issue for trial. The issue presented by a motion for summary judgment is not the weight of the evidence but whether there is sufficient evidence of the character and quality set forth in Civ.R. 56 to show the existence or nonexistence of genuine issues of fact.

■■ R.C. 4112.02(A) prohibits handicap discrimination. To survive a motion for summary judgment, a plaintiff alleging handicap discrimination must establish a prima facie case of discrimination. *Hood v. Diamond Products, Inc.* (1996), 74 Ohio St.3d 298, 658 N.E.2d 738. Ohio courts have held that, when interpreting R.C. Chapter 4112, it is appropriate to look to analogous federal statutes. See *Wooten v. Columbus, Div. of Water* (1993), 91 Ohio App.3d 326, 334, 632 N.E.2d 605, 610. In order to establish a prima facie case of handicap discrimination, the person seeking relief must demonstrate that (1) he was handicapped; (2) an adverse employment action was taken by the employer, at least in part, because the individual was handicapped; and (3) the person, though handicapped, can safely and substantially perform the essential functions of the job in question. *Hood* at syllabus.

The trial court found that appellant did not demonstrate a prima facie case of discrimination because he does meet the definition of "handicap" set forth in R.C. 4112.01(A)(13). R.C. 4112.01(A)(13) defines "handicap" as follows:

"[A] physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment."

Appellant was treated by two doctors for depression. He was treated by a psychologist from June 1994 until March 1996 for dysthymic disorder with a secondary diagnosis of adjustment disorder with mixed emotional features. The psychologist stated that appellant had symptoms of depression and confusion and he recommended that appellant use Prozac to help the depression. The psychologist stated that appellant had psychomotor retardation and flat affect and blunted speech as a result of his depression, which was noticeable to anyone; however, the psychologist stated that appellant was not unable to work.

Appellant first consulted the psychologist for problems relating to his marriage. In January 1995, he related complaints pertaining to his job and, in

February 1995, reported conflicts with his supervisor. The psychologist advised appellant:

"[TO BE] CLEAR WITH HIS SUPERIORS THAT HE WAS IN TREAT-MENT, THAT HE WAS TAKING AN ANTIDEPRESSANT, AND THAT HE SHOULD BE STRAIGHT WITH THEM ABOUT THAT.

"Q WHAT WAS JOSEPH BEAUCHAMP'S RESPONSE TO THAT RECOMMENDATION?

"A NONE."

Appellant's family doctor stated that, in July 1994, appellant had complaints of being stressed and having trouble sleeping and concentrating, and that he was moody, defensive, anxious, and depressed. This doctor recommended continued counseling with the psychologist and prescribed Prozac. The doctor did not believe a determination could be made that someone was depressed just by looking at the person. He also stated that he saw an improvement in appellant by September 1994, which the doctor attributed to the medication and counseling. In June 1995, the doctor noted that appellant had minimal depression.

■ The mere fact that appellant suffered from depression is not sufficient, in and of itself, to meet the definition of "handicap" in R.C. 4112.01. In order to be handicapped under the Ohio Revised Code, the mental impairment must substantially limit one or more major life activities. Appellant's deposition testimony on this issue is not clear. Appellant stated that he believes that he is legally handicapped and has been for at least twelve years; however, appellant stated that he does not believe that he is impaired in a job situation because he does not believe that his depression was a disability because he could perform his job better than others. He stated, "In a job situation I will perform as well or better than the vast majority of people in that same job situation. That, to me, indicates not a handicap in job-related activities." When asked whether his depression disabled him from certain major life activities, such as being able to care for himself, walking, seeing, hearing, and speaking, appellant answered "no." He then replied, "Do you have a list of silly questions like that that you want to go through? I could just say no to all of them." Appellant also stated:

"I DON'T KNOW THAT I COULD EVER SAY THAT I WAS DISABLED DUE TO DEPRESSION. I COULD SAY THAT THERE ARE DAYS THAT, LIKE ANYBODY ELSE, I WOULD FEEL DEPRESSED AND NOT WANT TO DO SOME PARTICULAR WORK AND GO DO SOMETHING ELSE, BUT I DON'T THINK THAT'S ANY DIFFERENT FROM WHAT ANYBODY ELSE DOES WHEN THEY FEEL LIKE WORKING ON SOMETHING ELSE BECAUSE THEY DON'T WANT TO APPROACH A PARTICULAR

PROBLEM OR DON'T FEEL LIKE IT. SO I WOULD SAY NO, I DON'T BELIEVE THAT REALLY WAS ANY DISPLAY OF ANY DISABILITY."

When asked if he had a disability or a perceived disability, appellant stated:

"I HAD A DISABILITY, CLINICAL DEPRESSION. I DO NOT BELIEVE THAT IT MADE IT SO THAT I COULD NOT PERFORM MY JOB AS WELL OR BETTER THAN ANYBODY ELSE IN MY POSITION OR VERY FEW PEOPLE IN THE COUNTRY. SO I DON'T BELIEVE THAT IT DISABLED ME. I DO BELIEVE THAT I HAD A DISABILITY THAT I HAD TO WORK WITH IN ORDER TO PERFORM AND OUTPERFORM WHAT OTHER PEOPLE WOULD DO IN ORDER TO GET THE JOB DONE. AND I THINK I DID THAT VERY WELL."

However, when asked if his depression interfered with learning, he replied, as follows:

"I WOULD IMAGINE AT TIMES IT WOULD PROBABLY BE DIFFICULT. AS I DISCUSSED WITH YOU YESTERDAY, OR I GUESS I HAD A MONOLOGUE YESTERDAY, AS WHEN ANYBODY IS DEPRESSED, IT'S DIFFICULT TO DO THINGS LIKE LEARN. SO IN THAT REGARD, YES, PROBABLY AT TIMES I HAD TO WORK HARDER TO LEARN THAN I WOULD HAVE HAD I NOT BEEN DEPRESSED ON THAT PARTICULAR DAY."

He also then stated that any difficulty learning did not affect his performance.[1] In spite of his conflicting evidence, since appellant is the nonmoving party concerning summary judgment and we must construe all inferences in his favor, we find that, for purposes of the motion for summary judgment, appellant was handicapped.

Demonstrating a prima facie case of handicap discrimination requires that appellant also prove that adverse employment actions were taken based, at least in part, upon the handicap. Appellant contends that four adverse employment actions were taken against him, including (1) changing his job responsibilities to exclude any management responsibilities and demoting appellant from an executive position to essentially a staff position at a lower compensation rate, (2) devising a "three-month plan" from February to April 1995, (3) placing appellant on a performance improvement plan ("PIP"), and (4) termination in June 1995. Appellant contends that these actions were taken, at least in part, due to his depression. Appellant argues that, prior to telling his supervisor, Sandy Trevor, about his depression in the fall of 1994, he received favorable performance

---

1. Appellant also stated that, after this lawsuit, he does not intend to continue using Prozac, and he will not consider himself handicapped.

reviews. Shortly after telling Trevor, the adverse employment actions were taken against him. All the employment decisions were made by Trevor, and Trevor is the person appellant spoke to concerning his handicap.

 To prove discrimination, an employee must demonstrate that the employer knew, or should have known, of the employee's handicap and resulting limitations. The evidence in this case does not demonstrate that appellee knew of any of appellant's limitations that resulted from his handicap. Although appellant states that he told Trevor that he was diagnosed with depression and was taking Prozac, he did not tell Trevor that he had a disability or that his depression limited his ability to work. In fact, in his deposition, appellant states that he was able to work around his handicap and successfully complete his job duties. Thus, without his informing appellee of his limitation, by his own admission, appellee would not have known of the limitation. In fact, in the vice-president of human resources' deposition, she stated that, after appellant signed his performance improvement plan and wrote that he believed the evaluation was discriminatory, she set up a meeting with appellant concerning his discrimination allegation; however, appellant did not discuss any discrimination but focused on his belief that the company was moving in the wrong direction. She stated as follows:

"Q. So you never really discussed the substance of his [complaint of discrimination?]

"A. We didn't. He knew the purpose of the meeting, but also for someone at his level I thought it was important to make the overture and let him know I was available to talk about it if he wanted to. But he chose not to talk about it.

"Q. Did you do any independent investigation into his claims?

"A. No.

"Q. Okay. Did you at any point in time explore accommodating any disability for Mr. Beauchamp?

"A. No. He didn't ask for any and I wouldn't have any reason to ask him."

 The distinction between the knowledge of the disability and the knowledge of the limitations placed on the employee by the disability is important because the employer is required to reasonably accommodate only limitations, not disabilities. *Taylor v. Principal Fin. Group, Inc.* (1996), 93 F.3d 155, certiorari denied (1996), 519 U.S. 1029, 117 S.Ct. 586, 136 L.Ed.2d 515. Better public policy dictates that an employer presume that disabled employees are not limited in their abilities to adequately perform their jobs. *Taylor* at 164. Thus, appellant has not demonstrated that appellee knew of his limitation and based any employment decisions, even in part, upon his disability.

 If a plaintiff has set forth a prima facie case of handicap discrimination, the burden shifts to the defendant to set forth a legitimate, nondiscriminatory reason for the adverse employment actions or terminating the plaintiff. *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.* (1981), 66 Ohio St.2d 192, 20 O.O.3d 200, 421 N.E.2d 128. Appellee has set forth a legitimate, nondiscriminatory reason for the adverse employment actions. Appellee contends that appellant's refusal to accept Trevor's decision regarding the new operating system, Windows NT, intensified to the level of insubordination and lowered morale of the employees he supervised.

 When the defendant provides a legitimate, nondiscriminatory reason, the burden again shifts to the plaintiff to demonstrate that the employer's stated reason constitutes a "pretext for impermissible discrimination." *Plumbers & Steamfitters* at 198, 20 O.O.3d at 203, 421 N.E.2d at 132, citing *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 804, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668, 678–679. Appellant contends that the stated reason for his opposition to the Windows NT decision is a pretext because, prior to his telling Trevor about his depression, he received favorable job reviews. However, appellant's deposition testimony sets forth that Trevor was concerned about appellant's conduct prior to being told about his depression. Trevor had a meeting with the people appellant supervised in the Systems department, because Trevor was upset with them because they did not seem to have a positive attitude towards Windows NT. After the meeting with the Systems people, Trevor met with appellant, and appellant stated that Trevor "came in and said he had never seen a group that was so turned around and against Windows NT in an angry fashion." After that, appellant informed Trevor that he was diagnosed with depression. Appellant's deposition testimony confirms that Trevor was concerned about the attitude towards Windows NT before appellant informed him of his disability. Thus, appellee was taking action before knowledge of appellant's disability and could not have been motivated by his disability.

Appellant also contends that his department was the only department with Windows NT running, which indicates that he did support the decision; however, appellee's concern was that appellant's attitude was the problem, more than the work product. Also, appellant contends that CompuServe is no longer using Windows NT, although appellee contends that they are still using the system. This conflict in evidence is not a material conflict because the problem, once again, was with appellant's attitude and behavior. Given these determinations, appellant's claim does not survive a motion for summary judgment and the trial court did not err in granting summary judgment on appellant's handicap discrimination claim. Appellant's first and fourth assignments of error are not well taken.

By the second, third, and fifth assignments of error, appellant contends that the trial court erred in granting appellee's motion for summary judgment as to his age discrimination claim. Appellant does not allege direct evidence of age discrimination. Absent direct evidence, to establish a prima facie case of age discrimination, an employee must demonstrate (1) that he was a member of the statutorily protected class; (2) that he was discharged; (3) that he was qualified for the position; and (4) that he was replaced by, or that the discharge permitted the retention of, a person not belonging to the protected class. *Kohmescher v. Kroger Co.* (1991), 61 Ohio St.3d 501, 575 N.E.2d 439, syllabus. Since *Kohmescher,* the standard of proof required has been refined. If a prima facie case is presented, the employer must present evidence of a legitimate, nondiscriminatory reason for the discharge. The burden again shifts to the plaintiff to present evidence that the employer's stated reason for the discharge was a mere pretext. *Gordon v. Universal Electronics, Inc.* (Oct. 1, 1997), Summit App. No. 18071, unreported, 1997 WL 625485. In proving that the employer's stated reason for discharge was a pretext, the plaintiff must prove not only that the employer's reason for discharge was false but also that the discrimination was the real reason. *Weiper v. W.A. Hill & Assoc.* (1995), 104 Ohio App.3d 250, 263, 661 N.E.2d 796, 805, citing *St. Mary's Honor Ctr. v. Hicks* (1993), 509 U.S. 502, 510, 113 S.Ct. 2742, 2748–2749, 125 L.Ed.2d 407, 418.

Appellant, who is more than forty years old, has alleged that he was replaced by Jill Marras, who was in her thirties. The president and chief executive officer stated in his deposition that appellant's responsibilities were assumed by Marras, Bruce MacNaughten, and Sandy Trevor. However, the vice-president of human resources stated in her deposition that Marras assumed approximately eighty-five percent of appellant's responsibilities and she is now probably a full replacement for appellant. Construing this evidence in appellant's favor, we conclude that Marras replaced appellant.

However, the mere hiring of a younger employee does not create an inference that the older employee's discharge was motivated by age discrimination. *Weiper,* 104 Ohio App.3d at 263, 661 N.E.2d at 805, citing *Chappell v. GTE Products Corp.* (C.A.6, 1986), 803 F.2d 261, 267, certiorari denied (1987), 480 U.S. 919, 107 S.Ct. 1375, 94 L.Ed.2d 690. Appellant provided no evidence that any reference was made to his age by appellees. Appellant stated in his deposition:

"Q * * * WHAT IS THE BASIS FOR YOUR BELIEF THAT YOU'VE BEEN DISCRIMINATED AGAINST BASED UPON YOUR AGE?

"* * *

"A WELL, I WAS REPLACED FOR THE VAST MAJORITY OF MY WORK BY JILL MARRAS, WHO IS YOUNGER THAN ME AND PAID LESS THAN ME AND UNDER THE AGE OF 40. * * *

"Q ANY OTHER REASONS, OTHER THAN BEING REPLACED BY SOMEONE YOUNGER, THAT YOU BELIEVE YOU WERE DISCRIMINATED AGAINST BASED UPON YOUR AGE?

"* * *

"A THE ACTIONS OF THAT REPLACEMENT SEEMED TO BE TO TAKE ME OUT OF WHAT I HAD BEEN DOING FOR THE LAST SEVERAL YEARS, PUT ME INTO A TECHNICAL ROLE FROM A MANAGEMENT ROLE AND TO LOWER MY PAY AND TO MOVE MY OFFICE TO A LIKE–SIZED OFFICE FOR NO REASON, INCLUDING ACCESS TO THAT OFFICE. SO FOR MANY REASONS IT LOOKS LIKE THERE WAS SOMETHING GOING ON HERE BESIDES JUST LET'S PUT SOMEBODY IN CHARGE OF WHAT I WAS DOING. THAT SEEMS DISCRIMINATORY TO ME.

"Q OKAY. AND WHAT, IN YOUR MIND, TIES THAT TO YOUR AGE?

"* * *

"A * * * I THINK THE FACT THAT THE EVENTS HAPPENED TIES THAT TOGETHER. I DON'T BELIEVE ANYBODY CAME BY—I DON'T BELIEVE SANDY TREVOR CAME BY AND SAID BECAUSE YOU'RE TOO OLD WE'RE GOING TO MOVE YOU OVER HERE AND MOVE SOMEBODY WHO IS UNDER 40 INTO YOUR POSITION. * * * HOWEVER, FROM THE ACTIONS THAT OCCURRED AND FROM THE RESULTS AND FROM THE RESPONSIBILITY TAKEN AWAY, IT CERTAINLY APPEARS THAT THAT IS WHAT HAPPENED.

"* * *

"Q OKAY. I'M ASKING SPECIFIC TO YOUR CASE, ANY STATEMENTS RELATED TO JOE BEAUCHAMP THAT LEAD [YOU TO] BELIEVE YOU WERE DISCRIMINATED AGAINST BASED UPON YOUR AGE?

"* * *

"A NOT THAT I'M AWARE OF OR THAT I CAN THINK OF AT THE MOMENT."

Since appellant has not offered any evidence of age discrimination besides the fact that he was replaced by an employee who was less than forty years old, the trial court did not err in granting summary judgment on this issue. Thus, appellant's second, third, and fifth assignments of error are not well taken.

 By the sixth assignment of error, appellant contends that the trial court erred in considering depositions that were not timely or properly filed by appellee. Appellant contends that appellee did not properly support its motion for summary judgment because it did not file the supporting depositions at the time it filed its motion. Appellee filed its motion for summary judgment on April 24, 1997, and attached copies of pages of the depositions to the motion and an affidavit. Appellee later filed the complete depositions, and all of the depositions in this case were filed on or before May 21, 1997 (appellee filed the depositions on both May 12 and 13, 1997). Loc.R. 57 of the Court of Common Pleas of Franklin County, General Division, deals with motions for summary judgment and provides:

"57.01 All motions for summary judgment filed pursuant to Civil Rule 56 are hereby set for a non-oral hearing date on the 28th day following the filing of the motion for summary judgment. * * *

"57.02 All affidavits, depositions, and other evidentiary material permitted by Civ.R 56(C) in support of or in opposition to the motion for summary judgment shall be filed prior to the day set for the non-oral hearing on the motion. * * * * "

The non-oral hearing date was twenty-eight days after the motion was filed, or May 22, 1997. Appellant argues that he was required to file his response before the depositions were filed with the court. However, copies of the excerpts of the depositions were filed with the motion, so appellant was aware of the evidence that appellee was relying upon, so there was no prejudice. This case is similar to *Fahlgren & Swink, Inc. v. Impact Resources, Inc.* (Dec. 24, 1992), Franklin App. No. 92AP–303, unreported, 1992 WL 385941, in which this court reached the same conclusion. All of the depositions were filed prior to May 22; therefore, the evidence was timely filed and the trial court could consider such evidence. Appellant's sixth assignment of error is not well taken.

 By the seventh assignment of error, appellant contends that the trial court erred in striking appellant's affidavit and in failing to consider the "corrected" affidavit that was filed as a substitute for the stricken affidavit prior to the trial court's decision. Appellant filed a document entitled, "Plaintiff's Affidavit In Support of Plaintiff's Memorandum Contra Defendant's Motion For Summary Judgment." The "affidavit" is a recitation of the facts in his memorandum contra and does not state that it was based upon personal knowledge as required by Civ.R. 56(E). This court has previously rejected affidavits that merely recite that the allegations in the memorandum contra are true. See *Climaco, Seminatore, Delligatti & Hollenbaugh v. Carter* (1995), 100 Ohio App.3d 313, 321, 653 N.E.2d 1245, 1250. Also, appellant essentially admits in his brief that the document was filed in error.[2] Thus, the trial court did not err in striking appellant's affidavit.

---

2. On page 32 of his brief to this court, appellant states as follows:

However, appellant contends that the second affidavit he filed should have been considered by the trial court. That affidavit was filed on May 28, 1997, which was clearly after the non-oral hearing deadline. Thus, the trial court was not required to review it. Also, appellant admits that the second affidavit does not contain any evidence that was not already in appellant's deposition. See appellant's brief to this court at page 33. Thus, appellant has not demonstrated any prejudice. Appellant's seventh assignment of error is not well taken.

By the eighth assignment of error, appellant contends that the trial court erred in sustaining appellee's motion for summary judgment and granting summary judgment to appellee. By our rulings on the other assignments of error, we have already addressed this issue. Therefore, appellant's eighth assignment of error is not well taken.

For the foregoing reasons, appellant's eight assignments of error are over-ruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

TYACK and LAZARUS, JJ., concur.

---

"The seventh assignment of error relates to the affidavits of Plaintiff filed by Plaintiff in opposition to CompuServe's deposition, the first of which the trial court ordered stricken because 'Plaintiff's counsel admits it was filed in error.' *Although this is essentially correct,* the second affidavit in correct traditional form was filed as a substitute for the one 'filed' in error and stricken by the court." (Emphasis added.)