DECISION AND JOURNAL ENTRY
Plaintiff-appellant, Robin Cooke, appeals the judgment of the Summit County Court of Common Pleas that granted summary judgment to defendant-appellee, SGS Tool Company. We affirm.
Appellant was employed by SGS Tool Company ("SGS") from 1996 to October 1997. During most of her employment at SGS, Charlene Harrison acted as her immediate supervisor in the shipping department. For a portion of her employment, Appellant worked in quality control, but SGS transferred her back to the shipping department at the end of a probationary period. On October 14, 1997, Ms. Harrison met with Appellant to discuss an apparent attendance problem. At that time, Ms. Harrison noted that Appellant had complied with company policy by providing a doctor's excuse for days missed, but recommended that she reevaluate her medical treatment with the goal of permitting her to work the hours scheduled. On October 22, 1997, Appellant's work team, chaired by Ms. Harrison, recommended termination based on her attendance record. SGS terminated Appellant thereafter.
After her exit interview, Appellant informed SGS by letter that she had been involved in a consensual intimate relationship with Ms. Harrison during the course of her employment. Appellant also alleged that as a result of her relationship with Ms. Harrison, her coworkers subjected her to harassment and ridicule. Appellant noted that Ms. Harrison was ordered to refrain from outside contact with employees prior to Appellant's termination. Finally, she maintained that she was terminated because Ms. Harrison "wanted her out," and observed that the tumult surrounding her employment had left her emotionally devastated.
On June 22, 1998, Appellant filed a complaint against SGS, alleging (1) that SGS unlawfully discriminated against her because of a disability, in violation of R.C. 4112.02(A); (2) that she had been subjected to sexual harassment and, eventually, unlawful discharge based on her sex; (3) that SGS negligently failed to provide a work environment free of harassment and, consequently, subjected her to emotional distress; and (4) that SGS knew of the harassment present in the environment and intentionally failed to remedy the situation, resulting in severe emotional distress. SGS moved for summary judgment on February 2, 1998; Appellant responded in opposition. On June 4, 1998, the trial court granted summary judgment to SGS on each of Appellant's claims. Appellant timely appealed. She has raised three assignments of error, which are consolidated for ease of disposition.
 ASSIGNMENT OF ERROR I The trial court erred by granting [SGS's] motion for summary judgment on count two of [Appellant's] complaint.
 ASSIGNMENT OF ERROR II The trial court erred by granting [SGS's] motion for summary judgment on count [one] of [Appellant's] complaint.
 ASSIGNMENT OF ERROR III The trial court erred by granting [SGS's] motion for summary judgment on count [four] of [Appellant's] complaint.
In her assignments of error, Appellant has argued that the trial court incorrectly granted summary judgment on her claims against SGS for discrimination on the basis of her sex and an alleged disability and for intentional infliction of emotional distress. We disagree.
In reviewing a trial court's ruling on a motion for summary judgment, this court applies the same standard a trial court is required to apply in the first instance: whether there were any genuine issues of material fact and whether the moving party was entitled to judgment as a matter of law. Parenti v. Goodyear Tire Rubber Co. (1990), 66 Ohio App.3d 826, 829. All facts must be construed in favor of the nonmoving party. Horton v. HarwickChem. Corp. (1995), 73 Ohio St.3d 679, 686-87. On a motion for summary judgment, the moving party "`bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims.'" Vahila v. Hall
(1997), 77 Ohio St.3d 421, 429, quoting Dresher v. Burt (1998),75 Ohio St.3d 280, 293. The nonmoving party then has a reciprocal burden to demonstrate genuine issues of material fact. Vahila v.Hall, 77 Ohio St.3d at 430.
 A. Sex Discrimination
In her complaint, Appellant alleged that SGS had unlawfully discriminated against her because of her sex in violation of R.C.4112.02(A). Specifically, she argued (1) that she was subjected to a hostile work environment and terminated under the pretext of excessive absence from work because of her relationship with Ms. Harrison, and (2) that she believed she would be terminated if she ended the relationship.
 1. Hostile Work Environment
R.C. 4112.02(A) states:
It shall be an unlawful discriminatory practice:
 For any employer, because of the * * * sex * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.
(Emphasis added.) Applying federal case law, Ohio courts have determined that a plaintiff may state a claim for unlawful sex discrimination based on harassment in the workplace by demonstrating: (1) membership in the protected class (2) unwelcome harassment (3) because of sex (4) that "had the purpose or effect of unreasonably interfering with the employee's work performance or creating an intimidating, hostile, or offensive work environment." Bell v. CuyahogaCommunity College (1998), 129 Ohio App.3d 461, 466-67. The plaintiff must also establish the existence of respondeatsuperior. Id. at 467. See, also, Ohio Adm. Code 4112-5-05(J)(1)(c) and4112-5-05(J)(2). In order to rise to the level of unlawful discrimination, harassment in the workplace must be "so `severe or pervasive' as to `alter the conditions of [the victim's] employment and create an abusive working environment.'" (First alteration in original.)Faragher v. Boca Raton (1998), 524 U.S. ___, ___,141 L.Ed.2d 662, 675, quoting Meritor Sav. Bank, FSB v. Vinson
(1986), 477 U.S. 57, 67, 91 L.Ed.2d 49, 60, quoting Henson v.Dundee (C.A. 11, 1982), 682 F.2d 897, 904. The conduct complained of, therefore, must be extreme. Faragher v. BocaRaton, 524 U.S. at ___, 141 L.Ed.2d at 677.
In this case, the trial court concluded that Appellant had not provided evidence of any harassment that occurred at her workplace because of her sex. We agree with this assessment.
Appellant argued that she was subjected to harassment by coworkers because of jealousy engendered by her relationship with Ms. Harrison. Specifically, she alleged that her coworkers, who were almost exclusively female, harassed her because they perceived favoritism toward her by Ms. Harrison, disliked her as a person, were themselves romantically interested in Ms. Harrison, or expressed the opinion that Appellant was undeserving of Ms. Harrison's affections.
As emphasized supra, R.C. 4112.02(A) prohibits employment discrimination against any person "because of * * * sex." In her deposition, Appellant alleged that her coworkers ridiculed her because of her sexual orientation and tormented her because of her relationship with Ms. Harrison. Although same-sex harassment may be actionable under R.C. 4112.02 to the extent plaintiffs can demonstrate that the harassment occurred because of their sex, the prohibitions of R.C. 4112.02(A) do not extend to sexual orientation. See Tarver v. Calex Corp. (1998), 125 Ohio App.3d 468,476-77. See, also, Retterer v. Whirlpool Corp. (1996),111 Ohio App.3d 847, 859; Greenwood v. Taft, Stettinius Hollister
(1995), 105 Ohio App.3d 295, 299.[1] Nothing in the record, including Appellant's own testimony, establishes a connection between her sex and any alleged harassment that occurred during her employment at SGS.
 2. Quid Pro Quo Harassment
Appellant's second argument was that she feared that her employment would be terminated if she ended the relationship with her supervisor. With respect to this claim, the trial court concluded that Appellant's testimony established that her relationship with Ms. Harrison was wholly consensual. We agree.
Unlawful discrimination based on an employee's sex includes:
 Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature * * * when:
 Submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment; [or]
 Submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual[.]
Ohio Adm. Code 4112-5-05(J)(1). A plaintiff alleging discrimination based on allegations of quid pro quo harassment must demonstrate:
 (1) that the employee was a member of a protected class, (2) that the employee was subjected to unwelcome sexual harassment in the form of sexual advances or requests for sexual favors, (3) that the harassment complained of was based on [sex], and (4) that the employee's submission to the unwelcome advances was an express or implied condition for receiving job benefits or that the employee's refusal to submit to the supervisor's sexual demands resulted in a tangible job detriment.
Schmitz v. Bob Evans Farms, Inc. (1997), 120 Ohio App.3d 264,269, citing Kauffman v. Allied Signal, Inc., Autolite Div.
(C.A.6, 1992), 970 F.2d 178, 185-86. Absent evidence that the terms or conditions of employment were affected by the unwelcome behavior, romantic involvement with a supervisor is insufficient to establish unlawful discrimination. See Aspv. Ohio Med. Transp., Inc. (June 29, 1999), Franklin App. No. 98AP-1063, unreported, 1999 Ohio App. LEXIS 2991, at *17.
Appellant testified in her deposition that her relationship with Ms. Harrison was wholly consensual. She also stated that the relationship ended by mutual agreement on or about September 14, 1997. She alleged that after that time, Ms. Harrison continued to make sexual advances toward her and that those advances were unwelcome. She conceded that she voluntarily spent a weekend, apart from work, with Ms. Harrison and that during that weekend the two engaged in sexual contact. There is no indication that she rebuffed Ms. Harrison's advances. Appellant stated that the tenure of the weekend led her to fear for her job, and that Ms. Harrison urged her not to "make me have to fire you." Appellant's explanation of this statement, however, belies her contention that Ms. Harrison exacted sexual relations from her as a condition of employment. Specifically, Appellant recalled that the growing tensions among her coworkers provided the context for Ms. Harrison's words:
 Q:Was she concerned that something you were doing at work was leading you down the road where you would get fired?
 A: This was all in the context of talking about the other people. * * * We were talking about * * * the bull crap at work. It had to do with them.
 Q: Okay. She was concerned that the resentment by your coworkers was growing to the point where she might have to fire you?
 A: I don't know if that was her thought. That's what I was led to believe, that it had something to do with the conflict at work.
* * *
 Q: Okay. I see. So the don't make me fire you comment was direct at don't let our relationship create any more conflict at work?
A: I don't know. * * *
* * *
 Q: It may well have been the conflict that was created by this relationship that would force some sort of adverse action towards you?
A: I don't know. I guess so. * * *
Appellant did not allege that her continued employment was expressly or impliedly conditioned upon consent to sexual relations with Ms. Harrison. Rather, her own comments imply that the potential continuation of that relationship, and the ensuing resentment among Appellant's coworkers, piqued Ms. Harrison's concern with respect to Appellant's employment.
Viewing the evidence in a light most favorable to Appellant, we agree that SGS is entitled to summary judgment on her sex discrimination claims. Her first assignment of error is overruled.
 B. Disability Discrimination
In her claim for disability discrimination, Appellant contended that SGS unlawfully demoted her and eventually terminated her employment without accommodating her "mental and emotional disability." The trial court granted summary judgment to SGS, concluding that Appellant did not offer evidence that she had been diagnosed with a condition constituting a disability or that her ability to function was limited by such a condition.
R.C. 4112.01(A) prohibits discrimination based on disability. In order to demonstrate a prima facie case of disability discrimination, a plaintiff must establish:
 (1) that he or she was handicapped, (2) that an adverse employment action was taken by an employer, at least in part, because the individual was handicapped, and (3) that the person, though handicapped, can safely and substantially perform the essential functions of the job in question.
Columbus Civ. Serv. Comm. v. McGlone (1998), 82 Ohio St.3d 569,571. Once an individual has demonstrated these elements, the employer bears the burden of demonstrating a legitimate, nondiscriminatory reason for its action. Hood v. Diamond Prod.,Inc. (1996), 74 Ohio St.3d 298, 302. The plaintiff then, in turn, must demonstrate that the articulated reasons are pretextual. Id.
For the purposes of this prohibition, a handicap is defined as:
 a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment.
R.C. 4112.01(A)(13). Mental or emotional illness is one form of mental impairment contemplated by this definition. R.C.4112.01(A)(16)(a)(ii).[2] Depression may constitute a handicap for the purposes of R.C. 4112.02 in some situations. See Hayes v. Cleveland Pneumatic Co. (1993), 92 Ohio App.3d 36,42. The purpose of the prohibitions of discrimination against individuals with disabilities is to protect those whose day-to-day lives are significantly impacted by a disability. McGlone, 82 Ohio St.3d at 572. Absent indications that one or more major life activities have been substantially limited, therefore, the experience of depression is insufficient to constitute a disability.Beauchamp v. CompuServe, Inc. (1998), 126 Ohio App.3d 17,23. See, generally, R.C. 4112.01(A)(13).
Appellant described the nature of the medical condition that led to her absences by recalling that she "was extremely depressed, extremely confused." She stated that "probably 90 percent" of her absences were due to depression. Appellant also recalled that, prior to her transfer back to the shipping department, she had a conversation with management regarding her condition:
 I told [Mr. Beck] the medications that I was on, I told him I had gone in for a complete physical. * * *
 Just basically explained to him what the doctor was finding out, what we were looking at. The doctor * * * thought maybe there was a possibility I was going through menopause. He looked at every avenue and every aspect of why I was suffering from depression and mood swings.
She noted that her physician recommended that she see a psychologist, but did not diagnose any condition. She recalled that she had been able to drive herself to work for most of the period of her employment and that she cleaned her own home. She stated that her brother or son did her grocery shopping because she preferred to stay at home after work, but also noted that she could do her own shopping if necessary. Appellant did note that she had frequent difficulty eating and sleeping, but summarized her condition as follows:
 I mean, I functioned. I lived. I mean, yes, I guess I could say that I was fine up to that point. I mean, I did what I had to do to survive, but I was extremely depressed * * *.
While Appellant's testimony substantiates her statements that she was emotionally distraught, she has not demonstrated that she suffered from a disability as contemplated by R.C.4112.01(A)(13). Appellant was never diagnosed with depression and acknowledged that many of the physical symptoms that she experienced could be attributed to a reaction to prescription medication. She opined that one immediate cause of her condition was the alleged harassment meted out by her coworkers and the strain of her relationship with Ms. Harrison. Appellant was substantially able to function on a day-to-day level. Having failed to demonstrate that she suffered from a cognizable disability, Appellant did not state a prima facie case of disability discrimination.
Assuming, arguendo, that Appellant had established a prima facie case of disability discrimination, SGS proffered excessive absenteeism as the reason for her discharge. Specifically, SGS produced records noting that Appellant had been absent from work sixteen times[3] in the ten months immediately preceding her termination. Ms. Harrison noted other instances of tardiness, and recalled that absenteeism had been noted in Appellant's performance evaluations prior to her dismissal. "Discrimination based on * * * a record of absenteeism is not discrimination `because of * * * handicap' under R.C. 4112.02(A)." (Second alteration in original.) Cleveland Civ. Serv. Comm. v. Ohio Civ.Rights. Comm. (1991), 57 Ohio St.3d 62, 65. This is the case even when absence may be attributable to a disability. See id.; Hayesv. Cleveland Pneumatic Co., 92 Ohio App.3d at 43.
Appellant concurred in SGS's appraisal of her absences as "excessive," but noted that a physician verified the medical reasons for each occurrence. Ms. Harrison agreed, but noted the vague nature of the medical excuses:
 A: * * * [W]hen she did report off and return to work she would produce a doctor's excuse.
 When an associate is off and they [sic] bring a doctor's excuse in, that means that they were sick for this reason and then they get released back to work because they've been treated for whatever their problem is.
* * *
 [Robin] always brought in a doctor's excuse. The problem was that the excuse was always from the same doctor for the same, stating the same problem. So it wasn't as though she was sick, going and getting treatment, followed the doctor's orders and then returned to work and the problem was resolved. She would come back to work and report off again and report off again. * * *
* * *
Q: Do you know what the excuse was?
 A: * * * [T]he reason that was on the doctor's excuse was vague. It was not clear. It did not say flu symptoms. It said, being treated by this doctor, to the best of my recollection.
Q: The doctor wouldn't say for what?
 A: No, it didn't. It didn't state. The doctor's excuses did not state specific illness.
 Q: * * * You're not saying that [Appellant] used the same exact excuse every time that she gave you the excuse?
 A: No, I'm not saying that. I'm saying that it was many times by the same doctor, not for specific reason[s], different dates.
* * *
 Q: Now, the doctor said that she was ill with something but was not specific, correct?
 A: * * * [W]hat I can recollect was, [Appellant] was seen in my office on this date, may return to work on this date.
 Q: So the doctor wouldn't put that there was any type of illness on the form?
A: Right.
 Q: Were you aware of any type of illness that [Appellant] was experiencing?
A: No, I didn't know what she was being treated for.
Ms. Harrison also stated that she had no knowledge of an illness or disability suffered by Appellant.
In order to demonstrate that an employer's articulated reason for dismissal is pretextual, a plaintiff must produce some evidence tending to establish (1) that the stated reason is false, and (2) that the actual reason was, in fact, discrimination.Beauchamp v. CompuServe, Inc., 126 Ohio App.3d at 27. With respect to the first requirement, a plaintiff may produce either evidence directly demonstrating the falsity of the stated reason for discharge or evidence indirectly tending to undermine the credibility of that reason. Brock v. Gen. Elec. Co. (1998),125 Ohio App.3d 403, 408. An employee may not presume that knowledge of the existence of a disability includes knowledge of limitations caused by that condition for which an employer must make accommodations. Beauchamp v. CompuServe, Inc.,126 Ohio App.3d at 25. "[An] employer is required to reasonably accommodate only limitations, not disabilities." Id.
In a counseling session between Ms. Harrison and Appellant, Ms. Harrison encouraged Appellant to seek another doctor's assistance and to take advantage of SGS's medical leave policy. As noted above, Appellant also maintained that she discussed her condition with management. Whatever level of awareness may have existed with respect to Appellant's alleged disability on the part of SGS, awareness of a disability, without more, is not sufficient evidence to demonstrate either that SGS's articulated response is false or that discrimination was the actual reason for Appellant's discharge.
Appellant's second assignment of error is overruled.
 C. Intentional Infliction of Emotional Distress
In her complaint, Appellant alleged that SGS intentionally inflicted emotional distress upon her by (1) intentionally failing to remedy the harassment meted out by Appellant's coworkers and (2) terminating her employment because of her disability. The trial court concluded that Appellant produced no evidence demonstrating that SGS's conduct was extreme or outrageous.
Once the moving party on a motion for summary judgment has complied with its evidentiary burden, the nonmoving party has a reciprocal burden to comply with Civ.R. 56(E) by producing evidence to demonstrate genuine issues of material fact. Vahilav. Hall, 77 Ohio St.3d at 429. When a motion for summary judgment is supported as required by Civ.R. 56, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in [Civ.R. 56], must set forth specific facts showing that there is a genuine issue for trial." Dresher v. Burt, 75 Ohio St.3d at 293, quoting Civ.R. 56(E). See Phares v. Midway Mall Dev. Corp. (Apr. 29, 1998), Lorain App. No. 97CA006814, unreported, at 8-9. When the opposing party does not respond in opposition to a motion for summary judgment, "summary judgment, if appropriate, shall be entered against" the party. Civ.R. 56(E).
Appellant did not respond to SGS's motion for summary judgment with respect to her claim for intentional infliction of emotional distress. Accordingly, the trial court did not err in granting summary judgment to SGS on that claim. See Mathis v.Cleveland Public Library (1984), 9 Ohio St.3d 199, 202; Lovejoy v.Wolny (July 16, 1997), Medina App. No. 2617-M, unreported, at 14. Appellant's third assignment of error is overruled.
Appellant's assignments of error are overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant. Exceptions.
 _____________________________ LYNN C. SLABY, FOR THE COURT.
BATCHELDER, J. and CARR, J. CONCUR.
[1] The United States Supreme Court originally addressed this situation in Oncale v. Sundowner Offshore Serv., Inc. (1997), 523 US ___, ___, 140 L.Ed.2d 201, 209, holding that "sex discrimination consisting of same-sex sexual harassment is actionable under Title VII." The United States Supreme Court further held that a plaintiff who brings a same-sex sexual harassment claim under Title VII must prove that the conduct at issue actually constituted discrimination because of his/her gender. Id. at ___, 140 L.Ed.2d at 207.
[2] In addition, alcohol addiction constitutes a physical impairment for the purposes of R.C. 4112.02. Hazlett v. MartinChevrolet, Inc. (1986), 25 Ohio St.3d 279, syllabus. Although the record contains numerous oblique references to Appellant's attendance at Alcoholics Anonymous meetings, these references appear to set the social context for much of her testimony. Although Appellant points to her alcoholism in her brief to this court, we must note that Appellant's alleged mental and emotional instability formed the sole basis of her claim for disability discrimination. Her deposition testimony supports this conclusion.
[3] Appellant maintained that there were only fourteen such absences. This minor disagreement is not a dispute over a material fact sufficient to preclude summary judgment. SeeTrojan v. Ro-Mai Ind., Inc. (Aug. 19, 1998), Summit App. No. 18778, unreported, at 7-8.