DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Thomas Eisele, appeals from a decision of the Lorain County Court of Common Pleas, which entered judgment for PolyOne, Inc. on Eisele's claim of unlawful discharge from employment. We affirm.
 I. {¶ 2} Eisele began working for PolyOne in May, 1989; his employment ended on June 28, 2001. Eisele was employed as a packer with job duties that included grading, testing, packaging, and shipping of finished pellets used in industrial molding as well as computer data entry and mathematical calculations. It is undisputed that during his employment, Eisele received written reprimands, poor performance reviews, and was placed upon an "action plan" toward a goal of improving his job performance. PolyOne arranged for Eisele to receive further training in areas where Eisele experienced difficulties. At one performance review in 2001, Eisele explained to the management of PolyOne that his poor performance was due to disabilities: dyslexia and attention deficit hyperactive disorder. PolyOne gave Eisele a letter asking for medical confirmation of the existence of a disability, with an explanation of the nature, severity and duration of the disability, how the disability impaired Eisele's activities, and what accommodations would be required. Eisele, upon advice of counsel, refused to reply to the request. PolyOne, in another letter, told Eisele to return to work by a certain date, and if he had confirmation of his disability, they would discuss it with him upon his return. PolyOne further stated in the letter that failure to return to work on the date specified would be taken by PolyOne to be a voluntary resignation. Eisele did not return to work, but instead filed suit.
 {¶ 3} In his complaint, Eisele alleges that he is handicapped with a diagnosis of clinical depression, attention deficit disorder, and dyslexia, and that PolyOne was aware of his handicapped condition and regarded him as handicapped; that Eisele advised PolyOne of his condition in March, 2001, when he was given a new job assignment; that Eisele received assistance from another employee although PolyOne did not agree to allow this assistance on a daily basis; Eisele was disciplined for poor work performance and mistakes which are attributable to his handicapped condition; and, Eisele, upon demanding a reasonable accommodation, was terminated from his employment. Eisele's first cause of action alleges that Eisele was placed on involuntary leave in retaliation for his making a demand for reasonable accommodation in June, 2001, in violation of R.C. 4112.02(I). His second cause of action alleges that PolyOne violated R.C. 4112.02(A) when it required Eisele "to assume the burden of assisting [PolyOne] in avoiding its legal duty to make a reasonable accommodation for [Eisele's] handicap[.]"
 {¶ 4} Upon completion of discovery, PolyOne filed a motion for summary judgment claming that Eisele did not have a covered disability, did not demonstrate a need for a reasonable accommodation, and had not suffered an adverse employment action. The trial court granted the motion. Eisele timely appealed, raising two assignments of error.
 II. Assignment of Error No. 1
"The trial court prejudicially erred when it dismissed the [Appellant's] R.C. 4112.02 et seq. discrimination and retaliation case based upon the [appellee's] motion for summary judgment with a finding that there are no issues of material fact in dispute and [the appellee] is entitled to judgment as a matter of law. (Order dated 20 Feb 03)."
 {¶ 5} In his first assignment of error, Eisele states that the trial court's grant of summary judgment to PolyOne was erroneous because he is not required to demonstrate the presence of a handicap due to PolyOne's perception of him as handicapped. Further, he claims that his handicap substantially limits the major life activity of working for a living and he was entitled to a reasonable accommodation.
 {¶ 6} An appellate court reviews an award of summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. We apply the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Viock v. Stowe-Woodward Co. (1983),13 Ohio App.3d 7, 12.
 {¶ 7} Pursuant to Civil Rule 56(C), summary judgment is proper if:
"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327.
 {¶ 8} To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Dresher v. Burt
(1996), 75 Ohio St.3d 280, 293. The non-moving party must then present evidence that some issue of material fact remains for the trial court to resolve. Id.
 {¶ 9} Where the non-moving party would have the burden of proving a number of elements in order to prevail at trial, the party moving for summary judgment may point to evidence that the non-moving party cannot possibly prevail on an essential element of the claim. See, e.g., Stivisonv. Goodyear Tire Rubber Co. (1997), 80 Ohio St.3d 498, 499. The moving party "bears the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case." Dresher, 75 Ohio St.3d at 292. The burden then shifts to the non-moving party to show that there is a genuine issue of material fact as to that element. Id. at 293. "Mere reliance upon the pleadings is insufficient." Carr v. Nemer (Dec. 16, 1992), 9th Dist. No. 15575, at 2.
 {¶ 10} To the motion for summary judgment, PolyOne attached copies of the complaint, one affidavit and excerpts from four depositions. The depositions were given under oath and attested by a notary; attached to the depositions were copies of various documents referred to in the depositions and authenticated therein.
 {¶ 11} The affidavit is from Patricia M. Cateletto, Human Resource Manager of PolyOne's Geon Plant in Avon Lake, Ohio. Catalleto attests that Eisele's duties included:
"operating a machine for automatic loading of large cartons, moving cartons by fork-lift from plant floor to truck bed, computer data input, making entries on manual log sheets, as well as other various tasks. The log entries and computer data input are essential tasks for the packer position, as they are an integral part of the packing and shipment process. Packages must be properly loaded, labeled and shipped in a manner that conforms to weight and size limitations of the packing boxes. Tracking information is essential for each box to be properly labeled so that it can be correctly shipped as well as tracked later, if needed, to follow-up for quality control, shipment losses, or any other such questions that may arise concerning a particular package or shipment."
 {¶ 12} The first attached deposition is from Paul Selvage, Plant Manager; Selvage testified that Eisele "grossly overfilled" a box so that it was 1900 pounds overweight, and then shipped it as it was; the destination warehouse photographed and returned the box to PolyOne for adjustment. Selvage stated that it fell upon Eisele to remove material from the box to achieve compliance prior to shipping, and this was so obviously an error as to amount to dishonesty on Eisele's part. Selvage further testified that Eisele never told Selvage that "[y]ou cannot give me a poor performance evaluation because I'm disabled." Attached to Selvage's partial deposition is a letter identified as Exhibit 3, from Selvage to Eisele and dated July 2, 2001. Selvage averred that a Mr. Ames actually wrote the letter, which Selvage then read and signed. The letter states that:
"Following the Performance Evaluation given to you on 06/28/01 by your supervisor * * * you had a discussion with * * * Ames in which you stated that you had a disability which prevented you from being able to perform all aspects of your mob with consistency. You then presented to Mr. Ames a note from your doctor, dated June 11, 2001, which simply indicated that this doctor was treating you for a particular condition. * * *.
"PolyOne is viewing this note as an initial claim of disability. PolyOne fully complies with the Americans with Disabilities Act, and all other applicable laws relating to disabled employees, and that may include offering reasonable accommodations * * * where such disability is substantiated and where accommodations are required by law. In order for this claim to have any mitigating impact upon the consequences of your Performance Evaluation, we need for your doctor or treating medical professional to answer for PolyOne in writing the following questions:
"1. What are the nature, severity, and duration of your impairment?
"2. What activity or activities (all activities, not just work-related) are limited or impaired by your condition?
"3. To what extent/severity are the activities affected limited or impaired?
"4. What, if any, accommodations are required?"
 {¶ 13} The conclusion of the letter places Eisele upon paid administrative leave for the remainder of the week, and expresses a willingness to explore needed accommodations with Eisele. The letter also states that if Eisele did not contact PolyOne by the end of the week, the leave would be converted to unpaid leave. A second letter from Selvage to Eisele, dated July 3, 2001, attached as Exhibit 5, extended the paid administrative leave to July 13, 2001 upon Eisele's claim that his doctor was on vacation until July 11.
 {¶ 14} Selvage, in a letter to Eisele dated August 17, 2001, and attached as Exhibit 6, terminated the administrative leave. The letter claimed that Eisele had failed to raise his total performance evaluation as required by the amended action plan, and such was addressed with Eisele in a meeting on June 28, 2001. The letter further states that Eisele, at the same meeting, claimed to have a disability which prevented adequate job performance and that Eisele was asked to verify that with information from his physician. The letter concludes that since Eisele presented no documentation of a disability or requested accommodations, Eisele was expected to return to work on August 22, 2001, and medical documents or requests for accommodation that Eisele may have would be reviewed on that date; failure to comply would be considered a voluntary resignation.
 {¶ 15} Jeffrey Ames, Human Resources Manager, stated in his deposition, attached to the motion for summary judgment, that Eisele informed Ames that he had a disability. Ames declared that "my response to those statements was that `Tom, you need to have a medical diagnosis in order for any bearing to be brought on your condition in terms of your employment.'" Ames further testified that Eisele one day gave Ames a letter from Eisele's physician, attached as Exhibit 2, which states:
"To Whom it may concern,
"This letter is to inform you that my patient Thomas Eisele takes Adderall for his ADHD. Please keep on file for future record.
"Thank you[.]
"Sanjay Parikh M.D."
 {¶ 16} Finally, there is attached to the motion for summary judgment, part of the deposition of Sanjay Parikh, M.D. Dr. Parikh testified that he saw Eisele on April 25, 2001 and August 29, 2001. A letter generated as a result of the April 25 visit is attached to Dr. Parikh's deposition. The letter is addressed to another physician; it states that Eisele complained of frequently changing jobs and problems with concentration, memory, mood swings, depression, and attention span. Regardless of Eisele's complaints, the neurological examination notes indicate that Eisele's memory was intact for recent and remote events, and that he "had good attention span and judgment and was able to do serial 7. The patient was able to follow simple and complicated commands * * *." The physician's report from the August 29, 2001 visit indicated that Eisele was doing well and was able to pay attention, concentrate and do his work without difficulty. The report echoed the neurological examination findings from the April 25 visit.
 {¶ 17} As the moving party on the motion for summary judgment, PolyOne had the initial burden of demonstrating the basis for entitlement to summary judgment. Celotex Corp. v. Catrett (1986), 477 U.S. 317, 323,91 L.Ed.2d 265. Eisele, however, had the burden at trial, and to avoid a grant of summary judgment to PolyOne, Eisele was required to present evidence, already in the record, that, if believed, would have been supportive of his case. Maloney v. Barberton Citizens Hosp. (1996),109 Ohio App.3d 372, 375.
 {¶ 18} "In order to establish a prima facie case of handicap discrimination, the claimant must demonstrate each of the following: (1) that he or she was handicapped; (2) that an adverse employment action was taken by an employer, at least in part, because the individual was handicapped; and (3) that the person, though handicapped, can safely and substantially perform the essential functions of the job in question with reasonable accommodations." Morrison v. Crown Div. of Transpro, Inc.
(June 21, 2000), 9th Dist. No 99CA0011, at 8 citing Hood v. DiamondProducts (1996), 74 Ohio St.3d 298, paragraph one of the syllabus. If Eisele is unable to establish a prima facie case of handicap discrimination, the trial court's grant of summary judgment to PolyOne is correct. Markham v. Earle M. Jorgensen Co. (Aug. 17, 2000), 8th Dist. No. 76350.
 {¶ 19} R.C. 4112.01(A)(13) defines "disability" as:
"(1) a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; (2) a record of a physical or mental impairment; or (3) being regarded as having a physical or mental impairment." Pflanz v. Cincinnati, 149 Ohio App.3d 743, 2002-Ohio-5492, at ¶ 14.
"Substantially limits" means that the employee:
"(i) [is] [u]nable to perform a major life activity that the average person in the general population can perform; or (ii) [is] [s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the population can perform the same major life activity." Id. at ¶ 16, citing Section 1630.2(j)(1), Title 29, C.F.R.
 {¶ 20} Additionally, the regulations require that a court, when determining if a substantial limitation exists, consider: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long-term impact or the expected permanent or long-term impact of or resulting from the impairment. Id., citing Section 1630(j)(2), Title 29, C.F.R.
 {¶ 21} Eisele contends in his response to summary judgment and in his appellate brief that he is not required to prove a disability because his case is centered on PolyOne's perception that he is disabled. This argument is without merit. "A plaintiff may * * * demonstrate that he was disabled if he or she is regarded as such by his or her employer."McIntosh v. Stanley-Bostitch, Inc. (S.D. Ohio 2000), 82 F. Supp.2d 775,784. In order to succeed on a theory of perceived handicap, Eisele is required to demonstrate that PolyOne considered Eisele's to have an impairment, which impairment PolyOne believed to foreclose him from a class of jobs. ColumbusCiv. Serv. Comm. v. McGlone (1998),82 Ohio St.3d 569, 574. Then "`plaintiff must show that the perceived impairment is a substantial limitation on a major life activity.'"McIntosh v. Stanley-Bostitch, Inc. (S.D. Ohio 2000), 82 F. Supp.2d 775,784, quoting Kocsis v. Multi-Care Management, Inc. (6th Cir. 1996),97 F.3d 876, 885. The cases involving perceived disabilities center around a claim of disability that is proffered by the employer, rather than the employee, and then the disability is used as an excuse for disallowing an employment action on behalf of the employee. Such is not the case here. The only proponent of the presence of a disability is Eisele; Eisele has not shown that PolyOne ever stated that it was unable to allow his desired employment action because it believed that Eisele suffers a disability.
 {¶ 22} We find that Eisele has failed to meet his burden of proof on summary judgment in other regards.
 {¶ 23} Attached to Eisele's response to the motion for summary judgment are Dr. Prarikh's April 25 and August 29 medical reports, a page titled "T.O.V.A. Interpretation", a ten page document titled "Operator Performance Review and Development Form", one page that appears to be a copy of an email, and two pages of a filing of Defendant's Answers to Plaintiff's Supplemental Demand for Discovery.
 {¶ 24} Eisele refers the court to particular pages of the deposition of Dr. Parikh, who testified that he diagnosed Eisele with ADHD for which he was prescribed Adderall. However, Dr. Parikh also stated that ADHD requires a thorough and complete clinical examination in order to establish an accurate diagnosis, to evaluate for the presence of co-existing medical or educational disabling conditions, and to rule out alternative explanations for behavior and/or relationship, occupational or academic difficulties. Dr. Parikh testified that he did not do the evaluation in this case. Dr. Parikh explained that the T.O.V.A. interpretation tests visual attention, but it is not diagnostic. Besides ADHD, Eisele claimed to have disabilities of dyslexia and depression which prevented him from performing job duties. There is no testimony supporting the presence of dyslexia other than Eisele's statement that his parents advised him of its presence. Likewise, Eisele presented no evidence of depression.
 {¶ 25} Further, within the narrative of his motion against summary judgment for PolyOne, Eisele claimed that, regardless of PolyOne's evidence, there were still two questions of material fact for the trial of fact to determine: whether PolyOne constructively or directly discharged Eisele for a discriminatory purpose based upon his perceived handicap or is the stated reason (failure to meet the terms of the amended action plan) pretextual; and, whether Polyone discharged Eisele in retaliation for his demand for a reasonable accommodation. These issues are irrelevant; the complaint does not allege a cause of action for constructive or actual discharge for any reason. The complaint limits itself to a cause of action for a retaliatory leave of absence and for a violation of R.C. 4112.02(A) in requesting documentary proof of a disability. Therefore, there is no issue of material fact to be determined regarding discharge from employment.
 {¶ 26} Assuming, arguendo, that Eisele has established the presence of a disability, he has not proven that PolyOne took an adverse employment action due to the disability. Eisele alleges that he was disciplined for failing to answer questions that PolyOne had no right to ask. However, once an employee requests an accommodation, an employer shows a good-faith attempt to comply when the employer meets with the employee, requests information about the conditions and limitations, and asks what accommodation is being sought. Shaver v. Wolske Blue
(2000), 138 Ohio App.3d 653, 669. The request for information posited by PolyOne was part of a good-faith effort to comply with the request for accommodation. The testimony reveals that Eisele voluntarily terminated employment rather than attempt to meet the request.
 {¶ 27} Eisele further argues that PolyOne already accommodated his disability for years; that argument also is not supported by the testimony. The testimony demonstrates that any help Eisele received was through private agreements with other employees, some of whom were tired of the requests, and that it wasn't until disciplinary action was commenced in 2001 that Eisele indicated to management that he needed an accommodation. Prior to that time, when PolyOne management discovered the unauthorized assistance, the other employees were asked to cease rendering such aid.
 {¶ 28} In order to receive accommodation, an employee must request it. Notice that an employee desires an accommodation does not have to be in writing, does not have to mention disability statutes, and does not have to invoke the words "reasonable accommodation" as long as it is clear that the employee desires assistance for the disability. Shaver,138 Ohio App.3d at 668. The testimony shows that a request for accommodation was not made clear until the disciplinary action was well underway in 2001. Roger Vanek, Eisele's shift supervisor in 1996 to 1997 indicates that Eisele told Vanek that Eisele was dyslexic. Vanek states that at the time the statement was made, Eisele was making mistakes such as wrong entries, incorrect totals, among others. Vanek relayed the information to Mike Guyer, in Human Resources because of the problems the mistakes were making on the production floor. Vanek testified that Eisele was receiving letters of reprimand for his personnel file, and that Vanek spoke with Eisele about Eisele's reliance on other employees. Vanek testified that when he told Eisele that it was Eisele's responsibility to do the work, Eisele agree with him. Vanek's testimony did not include any incidents wherein Eisele sought assistance from management to enable him to do his job.
 {¶ 29} Eisele has not demonstrated a prima facie case of discrimination in that he has not shown that he is disabled, or that PolyOne engaged in an adverse employment action due to the disability. Appellant's first assignment of error is overruled.
Assignment of Error No. 2
"The trial court prejudicially erred when it granted the defendant's motion for a protective order denying the plaintiff an opportunity to depose a key adverse witness sarah cruise. (Order Dated 23 Aug 02)."
 {¶ 30} In this assignment of error, Eisele argues that it was error for the trial court to issue a protective order barring the deposition of Sarah Cruise, in-house counsel for PolyOne. Eisele argues that deposition testimony demonstrates that Cruise was a management participant in the decision-making process determining the appropriate action to take on Eisele's disability claim and, therefore, may not claim attorney-client privilege.
"Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment * * *." Civ.R. 56(F).
 {¶ 31} In his opposition to summary judgment, Eisele does not argue that he could not meet his burden on summary judgment because he lacked this deposition testimony; therefore, our disposition of the first assignment of error renders this assignment of error moot.
 III. {¶ 32} Eisele's first assignment of error is overruled; the second assignment of error is moot. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
WHITMORE, J., CONCURS