DECISION AND JUDGMENT ENTRY
{¶ 1} Dr. Lisa A. Baird appeals a judgment affirming the Unemployment Compensation Review Commission's ("Commission's") finding that she was terminated from Southern Ohio Medical Center ("SOMC") for just cause and is therefore not entitled to unemployment benefits. The Commission found that SOMC's termination of Dr. Baird was justified because of her "death threats" against others and her falsification of a letter regarding her medical treatment. Dr. Baird acknowledges making an inappropriate statement about shooting two supervisors but contends that since she did not actually intend to shoot them, she should not have been terminated on this basis. She also denies creating the forged document. We conclude that Dr. Baird's inappropriate behavior was sufficient grounds for her termination and that, as the trier of fact, the hearing officer for the Commission was free to disbelieve Dr. Baird's claim that she did not falsify the letter.
 {¶ 2} We also reject Dr. Baird's assertion that she is entitled to unemployment compensation because she was terminated in violation of the Americans With Disabilities Act ("ADA") and the Family Medical Leave Act ("FMLA"). Dr. Baird failed to establish that she suffered from a disability as defined in the ADA or that, assuming she did suffer from such a disability, SOMC refused to provide reasonable accommodations for her or terminated her solely because of her disability. Dr. Baird also failed to establish that she was entitled to and properly invoked coverage under the FMLA.
 {¶ 3} We find that the Commission's decision denying benefits to Dr. Baird is not unlawful, unreasonable or totally lacking in competent, credible evidence to support it, and affirm the trial court's judgment.
 {¶ 4} SOMC hired Dr. Baird as a resident in its Family Practice Clinic. In March 2002, Dr. Terry A. Johnson, Dr. Baird's supervisor, wrote a letter to Dr. Baird expressing concern about her recent behavior. Dr. Johnson noted that Dr. Baird told another resident "if I had a gun I'd kill them both," referring to Dr. Johnson and Elizabeth Smith, the medical education coordinator. Dr. Baird also told a substitute receptionist that Dr. Johnson "really hated her" and told a nurse that she was sure Dr. Johnson hated her. Based on these incidents and others, Dr. Johnson indefinitely suspended Dr. Baird and directed her to seek psychiatric help. The psychiatrist who evaluated Dr. Baird concluded that she suffered from a major depressive disorder and a personality disorder. In April 2002, after being informed by another resident that Dr. Baird had faxed him a letter with the forged signature of another physician, Dr. Johnson terminated Dr. Baird.
 {¶ 5} Dr. Baird filed a claim for unemployment compensation benefits, which the Ohio Department of Job and Family Services ("ODJFS") granted. The Director of ODJFS affirmed the award of benefits. SOMC appealed this decision and ODJFS transferred the matter to the Commission.
 {¶ 6} A hearing officer employed by the Commission conducted a hearing and reversed the award of benefits. Dr. Baird filed an unsuccessful request for a Commission review of the hearing officer's decision, and then filed a notice of appeal with the Scioto County Court of Common Pleas. The court concluded that the Commission's decision to deny benefits was not unlawful, unreasonable or against the manifest weight of the evidence and affirmed it. Dr. Baird appealed the trial court's decision, assigning the following error: "The Court of Common Pleas abused its discretion in failing to reverse the December 31, 2002 Decision Disallowing Request for Review by which appellant's unemployment compensation benefits were denied, because the Court's decision was unlawful, unreasonable and against the manifest weight of the evidence."
 {¶ 7} Unlike most administrative appeals where we employ an abuse of discretion standard, see Lorain City School Dist. Bd.of Educ. v. State Emp. Relations Bd. (1988), 40 Ohio St.3d 257,260-261, 533 N.E.2d 264, our review of an appeal from the decision of the Commission is identical to that of the common pleas court. We must affirm the Commission's decision unless we find the decision to be unlawful, unreasonable, or against the manifest weight of the evidence. See R.C. 4141.28(N)(1);Tzangas, Plakas Mannos v. Ohio Bur. of Emp. Serv.,73 Ohio St.3d 694, 696, 1995-Ohio-206, 653 N.E.2d 1207.
 {¶ 8} In making this determination, we must give deference to the Commission in its role as finder of fact. We may not reverse the Commission's decision simply because "reasonable minds might reach different conclusions." On close questions, where the Commission might reasonably decide either way, we have no authority to upset the agency's decision. Irvine v. UnemploymentComp. Bd. of Rev. (1985), 19 Ohio St.3d 15, 18, 482 N.E.2d 587. Instead, our review is limited to determining whether the Commission's decision is unlawful, unreasonable or totally lacking in competent, credible evidence to support it. Id.
 {¶ 9} R.C. 4141.29(D)(2)(a) provides that an individual may not obtain unemployment benefits if he "has been discharged for just cause in connection with his work." See, also, Ford MotorCo. v. Ohio Bur. of Emp. Serv. (1991), 59 Ohio St.3d 188, 189,571 N.E.2d 727. "Just cause" exists if a person of ordinary intelligence would conclude that the circumstances justify terminating the employment. Irvine, supra, at 17,482 N.E.2d 587. An analysis of just cause must also consider the policy behind the Unemployment Compensation Act, which was intended to provide financial assistance to individuals who become unemployed through no fault of their own. Tzangas, supra, at 697,653 N.E.2d 1207. Accordingly, "fault" on an employee's part is an essential component of a just cause termination. Id. at paragraph two of the syllabus. The determination of just cause depends on the "unique factual considerations" of a particular case and is, therefore, primarily an issue for the trier of fact. Irvine,
supra, at 17, 482 N.E.2d 587.
Although Dr. Baird argues that the trial court erred in making certain findings, we are required to focus on the decision of the Commission, rather than that of the common pleas court, when reviewing claims for unemployment compensation benefits on appeal. Barilla v. Ohio Dept. of Job Family Servs., Lorain App. No. 02CA008012, 2002-Ohio-5425, at ¶ 6. Therefore, we focus on the findings and decision of the hearing officer when reviewing Dr. Baird's arguments.
 {¶ 10} At the hearing, SOMC introduced the testimony of two witnesses — Mary Beth Dever, Administrative Director of Physician Services for SOMC, and Dr. Matthew Haag, a resident and colleague of Dr. Baird — and submitted several documents. Ms. Dever testified that SOMC terminated Dr. Baird because of her disruptive behavior and threats, her chronic absenteeism, and because she lied about medical treatment she was allegedly receiving. Ms. Dever testified that the March 2002 letter from Dr. Johnson to Dr. Baird outlines specific instances of Dr. Baird's improper conduct and that her knowledge of Dr. Baird's behavior is the result of an investigation conducted by Dr. Johnson. Ms. Dever testified that a nurse at the family practice residency heard Dr. Baird threaten to shoot the medical education coordinator and Dr. Johnson, and the nurse informed the coordinator.
 {¶ 11} Dr. Haag testified that Dr. Baird informed him that she had been diagnosed with cancer while they both worked as interns at SOMC, the year before they started their residencies. After Dr. Johnson suspended Dr. Baird, he scheduled interviews with all of the residents to discuss Dr. Baird's behavior. Dr. Haag, who was a friend of Dr. Baird's, believed that proof of Dr. Baird's cancer treatment would help her gain reinstatement to her position, and he asked Dr. Baird to send him some evidence of her diagnosis. Dr. Baird faxed Dr. Haag a letter purportedly written by Dr. Peter Sheng, a hematologist/oncologist, stating that he was treating Dr. Baird for metastatic breast cancer. Dr. Haag was suspicious of the letter and contacted Dr. Sheng, who denied writing the letter and informed Dr. Haag that Dr. Baird was not his patient. After reviewing the letter, Dr. Sheng told Dr. Haag that the letterhead on the letter was not his own, though the address and phone number were correct. Dr. Haag informed Dr. Johnson of his findings.
 {¶ 12} Dr. Baird contends that she was pregnant and suffering from cancer at the time of her termination. She testified that she was absent two days in March 2002, due to a near miscarriage, but otherwise had few absences. Dr. Baird also testified that she had never been treated by Dr. Sheng and did not send Dr. Haag a letter from Dr. Sheng. Rather, Dr. Baird testified that she faxed Dr. Haag a letter detailing allegations of billing misconduct on SOMC's part.
 {¶ 13} The hearing officer concluded that SOMC terminated Dr. Baird for just cause in connection with work based on her inappropriate behavior. The hearing officer noted that Dr. Baird's comments about her supervisor were unprofessional and, more seriously, Dr. Baird's statements that she would shoot certain individuals if she had a gun were threatening and inappropriate. The hearing officer also found that Dr. Baird submitted falsified medical documentation. Based on these findings, the hearing officer denied Dr. Baird's claim for unemployment compensation benefits.
 {¶ 14} Dr. Baird argues that the Commission abused its discretion by finding that she was dishonest. She contends that she was pregnant and had cancer when she was terminated by SOMC, and that she did not lie about her medical treatment. The hearing officer's finding that Dr. Baird was dishonest focused on his conclusion that she had faxed a forged copy of a letter from Dr. Sheng to Dr. Haag. The hearing officer never found that Dr. Baird lied about the existence of either of her physical conditions. As the trier of fact, the hearing officer was free to credit Dr. Haag's testimony and disbelieve Dr. Baird's testimony regarding the letter. Moreover, as the hearing officer noted, Dr. Baird's comment on the fax cover sheet inviting her colleagues to attend her "hem-onc" (hematology/oncology) appointment is consistent with Dr. Haag's claim that the fax contained a copy of the letter regarding her treatment, not a letter concerning hospital billing practices as Dr. Baird asserted.
 {¶ 15} Next, Dr. Baird argues that she successfully refuted SOMC's allegations of excessive absenteeism. We do not disagree with this claim. The hearing officer's decision contains no finding that Dr. Baird's termination was justified based on her excessive absences. Therefore, it appears that the hearing officer concluded either that there was insufficient evidence to demonstrate that Dr. Baird was frequently absent, or that her absenteeism was an insufficient basis for her termination. Nonetheless, the hearing officer concluded that Dr. Baird's termination was for just cause based on other reasons.
 {¶ 16} Dr. Baird also contends that the hearing officer erred in finding that she was terminated for just cause based on the statement she made about shooting Dr. Johnson and Ms. Smith if she had a gun. First, she argues that the Commission should not have considered this information because neither Dr. Johnson nor any of the individuals who heard the comment testified. Under R.C. 4141.281(C)(2), however, hearsay evidence is admissible in unemployment compensation hearings. Therefore, the hearing officer could consider Ms. Dever's testimony and the information contained in the letter from Dr. Johnson to Dr. Baird, which detailed the incident. More importantly, Dr. Baird admitted making this statement during her own testimony.
 {¶ 17} Dr. Baird also argues that she made the shooting comment in a moment of anger and did not actually intend to shoot anyone. Further, she contends that Dr. Johnson did not credit her statement as he told her that he would have had a police escort remove her from the building if he truly believed she was a danger. Dr. Baird fails to recognize the seriousness of her statement. Given the number of workplace tragedies our society has endured over the past years, it is entirely understandable and reasonable that an employer would take serious action against an employee who makes such threatening comments. The employer need not prove the truth of those statements or that an actual threat existed. Dr. Baird's statement was wholly inappropriate and the Commission could reasonably conclude that SOMC had just cause to terminate her based on this statement and the other inappropriate and unprofessional statements she made at work regarding her supervisor and other employees of SOMC.
 {¶ 18} Next, Dr. Baird argues that SOMC terminated her in violation of federal law prohibiting disability discrimination. Dr. Baird contends that her psychiatric evaluation, conducted at Dr. Johnson's request, reveals that she suffers from a major depressive disorder and a personality disorder. Consequently, she claims the protection of the Americans With Disabilities Act ("ADA"), Section 12101 et seq., Title 42, U.S. Code, and an entitlement to reasonable accommodations for her disability from her employer. Dr. Baird also argues that, at a minimum, she was entitled to medical leave under the Family and Medical Leave Act ("FMLA"), Section 2601 et seq., Title 42, U.S. Code.
 {¶ 19} Dr. Baird did not explicitly argue to the Commission that she was terminated in violation of the ADA or the FMLA. A party cannot assert new legal theories for the first time on appeal. Stores Realty Co. v. Cleveland (1975),41 Ohio St.2d 41,43,322 N.E.2d 629. However, Dr. Baird's counsel did argue to the hearing officer that SOMC terminated her after her diagnosis in violation of "the law." Additionally, in her appeal of the hearing officer's decision to the Commission, Dr. Baird argued that the hearing officer "failed to observe that [she] was under a mental disability at the time of her termination." Therefore, we will consider her argument.
 {¶ 20} Although Dr. Baird cites no case law in support of her contention that a termination in violation of the ADA or the FMLA renders a termination without just cause, at least two Ohio appellate courts have refused to deny unemployment compensation benefits to workers who were discharged for exercising their federal rights. In Giles v. Willis (1981), 2 Ohio App.3d 335,442 N.E.2d 101, the Eighth District Court of Appeals reversed the Commission's denial of benefits to an employee who was terminated for circulating, among his co-workers, a petition concerning holiday leave. The court acknowledged a prior determination by a federal agency that the employee's actions were protected by the National Labor Relations Act and held that "an employee is not discharged for just cause where he is discharged for conduct which is protected by the United States Constitution or federal labor law." Id. at 338. Building on the Eighth District's rationale, the Seventh District found, in a case where there was no prior determination of a violation, that the provisions of the FMLA applied to the applicant and that her absences were justified under the act. Accordingly, that court held that the employee was discharged without just cause. See Jones v.Administrator, Ohio Bur. Of Emp. Serv., Mahoning App. No. 99CA224, 2000-Ohio-224.
 {¶ 21} We are hesitant to conclude that the Unemployment Compensation Review Commission, or this Court, is the proper forum to originally determine whether a termination of employment violates federal statutes. Moreover, we are concerned that the Commission would quickly become overburdened if it were required to review the merits of claimants' contentions that their employers violated federal law in terminating them. Claims of federal labor law violation are generally litigated in trial courts or an agency having special expertise in administering the remedial provisions of these acts. Often they require expert opinions, numerous depositions, and extensive discovery. Conversely, unemployment compensation hearings are usually short telephonic hearings with few witnesses where even hearsay evidence may be admissible. They are "summary" in nature in order to provide an expedited process for awarding benefits to claimants who are recently unemployed without fault on their part. Nevertheless, for purposes of reviewing Dr. Baird's claim, we will assume without deciding that if she established before the Commission that she was terminated in violation of the ADA, or the FMLA, her termination was without just cause. Obviously, a prior determination of a violation by an appropriate court or agency would be relevant. See, Giles, supra.
 {¶ 22} An employee has the burden of proving that she is entitled to unemployment compensation because she was discharged without just cause. Durgan v. Ohio Bur. of Emp. Serv. (1996),110 Ohio App.3d 545, 549, 674 N.E.2d 1208. Therefore, Dr. Baird had to prove that she was the victim of an unlawful discharge under the ADA or the FMLA.
 {¶ 23} To establish a prima facie case of discrimination under the ADA, an employee must prove that: (1) she has a disability; (2) she was qualified for the job; and (3) she either was denied a reasonable accommodation for her disability or was subject to an adverse employment decision that was made solely because of her disability. Johnson v. Mason (S.D. Ohio 2000),101 F.Supp.2d 566, 573.
 {¶ 24} The ADA defines a "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." Section 12102(2), Title 42, U.S. Code. The Code of Federal Regulations provides guidance for the meanings of the terms "substantially limits" and "major life activities." "Major life activities" are functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." Section 1630.2(i), Title 29, C.F.R. "Substantially limits" is defined in Section 1630.2(j)(1), Title 29 C.F.R. as: "(i) Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner, or duration under which an individual can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity."
 {¶ 25} Several Ohio courts have held that depression can be a disability under certain circumstances. Shaver v. Wolske Blue
(2000), 138 Ohio App.3d 653, 742, 742 N.E.2d 164; Beauchamp v.CompuServe, Inc. (1998), 126 Ohio App.3d 17, 709 N.E.2d 863;Hayes v. Cleveland Pneumatic Co. (1993), 92 Ohio App.3d 36,634 N.E.2d 228.[1] However, the mere fact that Dr. Baird suffered from depression is insufficient to demonstrate a disability. She must also demonstrate that the depression substantially limited one or more of her major life activities.Beauchamp, 126 Ohio App.3d at 23.
 {¶ 26} The examining psychiatrist found that Dr. Baird was "at high risk to decompensate under stress" and that "[t]he rigors of residency are stressful enough for her to deal with." He expressed concern for Dr. Baird's safety, that of her fetus, and that of other people if she continued "to be exposed to stress at this particular sensitivity [sic] time."[2] These opinions represent some evidence that Dr. Baird's ability to work was "substantially limited" by her depression. However, standing alone, the Commission could reasonably find them insufficient to prove that Dr. Baird suffered from a disability under the ADA. The psychiatrist never opined that Dr. Baird was incapable of working or that restrictions should be placed on her work. Likewise, Dr. Baird never testified that she was unable or limited in her ability to work.
 {¶ 27} In any event, even assuming Dr. Baird proved she suffered from a disability and that she was qualified for her job — which SOMC did not dispute — she did not demonstrate to the Commission that SOMC failed to make reasonable accommodations for her or terminated her solely because of her disability. In order to receive an accommodation, an employee must request it. Eislev. Polyone, Inc., Lorain App. No. 03CA8248, 2003-Ohio-6577, at ¶ 28. Although only a short time passed between the issuance of the psychiatric report and Dr. Baird's termination, the report reveals that Dr. Baird had suffered from depression for some time and previously took medication to treat the disorder. Therefore, Dr. Baird knew of her illness even before the psychiatric evaluation and could have requested an accommodation if she felt one was warranted. Since Dr. Baird did not introduce any evidence that she ever requested an accommodation from SOMC (even after being terminated), she cannot fault her employer for not providing one.
 {¶ 28} Dr. Baird also failed to prove that SOMC terminated her solely because of her depression. Although her supervisors likely knew that Dr. Baird was suffering from depression when they decided to terminate her, SOMC contends that the decision to discharge her was based on Dr. Baird's forgery of another physician's signature, not her illness, and Dr. Baird presented no evidence to the contrary. Therefore, the Commission could reasonably conclude that Dr. Baird failed to prove that she was terminated in violation of the ADA.
 {¶ 29} We look next to her argument concerning the FMLA, which provides eligible employees up to twelve work weeks of unpaid leave in any twelve month period "for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition."29 U.S.C. §§ 2601(b)(2), 2612. The FMLA prohibits employers from discriminating against employees for exercising their rights under the Act. 29 U.S.C. § 2615(a)(2). Dr. Baird presented no evidence to the Commission that she informed SOMC that she was eligible for leave under the FMLA and that she requested it. Therefore, the Commission could reasonably conclude that she failed to prove that her termination violated the FMLA.
 {¶ 30} Lastly, in her reply brief, Dr. Baird argues that she was guaranteed due process rights by her employment contract and that SOMC's failure to provide them rendered her discharge to be without just cause. However, she did not present this argument as an assignment of error or as an issue in her initial appellant's brief. Accordingly, we need not address it. See Sheppard v.Mack (1980), 68 Ohio App.2d 95, 97, 427 N.E.2d 522, and App.R. 12(A) and App.R. 16(A), which preclude raising an assignment of error or issue in a reply brief.
 {¶ 31} The Commission's decision is not unlawful, unreasonable or totally lacking in competent, credible evidence to support it and we affirm the denial of unemployment compensation benefits to Dr. Baird.
Judgment affirmed.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellees recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J. Abele, J.: Concur in Judgment and Opinion.
[1] These cases involve claims of disability discrimination under Ohio law. However, R.C. 4112.02, part of the Ohio Civil Rights Act, is similar to the ADA with respect to the definition of disability and the requirements for employers. Cases and regulations interpreting the ADA provide guidance to the courts in interpreting Ohio law. Yamamoto v. Midwest Screw Products,
Lake App. No. 2000-L-200, 2002-Ohio-3362.
[2] Dr. Baird did not introduce the psychiatric report at the hearing. Therefore, the hearing officer did not have the benefit of reviewing the report when rendering his decision. However, she did attach a copy of the report to her notice of appeal to the Commission.