[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
[1] Simon Compensation Services did not file an appellate brief and has not otherwise entered an appearance in this appeal.
 DECISION AND JUDGMENT ENTRY
{¶ 1} Jeffrey B. Walburn ("Walburn") appeals a judgment affirming an Unemployment Compensation Review Commission ("Commission") hearing officer's finding that he quit his employment with the United States Enrichment Corporation *Page 2 
("USEC") without just cause. Walburn resigned after two of his supervisors confronted him for failing to comply with a company policy. According to Walburn, their behavior during this encounter caused him to reasonably fear for his personal safety at work.
 {¶ 2} Walburn contends that the hearing officer erred in refusing to issue a subpoena for the testimony of an eyewitness to this encounter. He further contends that the hearing officer erred in refusing to issue a subpoena for the production of certain documents a USEC investigator used to draft an internal investigation report regarding the incident. Because Walburn failed to timely file the subpoenas with the Commission and failed to specifically proffer into the record what he believed the testimony and documents would have established, the hearing officer did not abuse his discretion in refusing to continue the hearing and issue the subpoenas.
 {¶ 3} Next, Walburn contends that the hearing officer unlawfully determined that he quit without just cause simply because Walburn failed to file a grievance with his collective bargaining unit before he quit. Walburn misreads the hearing officer's decision. In addition to finding that Walburn acted unreasonably by waiting to file a grievance until after he quit, the hearing officer also found that Walburn had no reasonable basis to fear for his personal safety after the encounter with his supervisors. Because a person who harbors an unreasonable fear for his/her personal safety cannot establish just cause for quitting on that basis, the hearing officer properly denied Walburn unemployment benefits. Accordingly, we affirm the trial court's judgment.
 I. Facts {¶ 4} USEC employed Walburn as an unarmed security officer at its facility in Piketon, Ohio, from September 1976 until October 2007, when he quit. Following his *Page 3 
resignation, Walburn filed an application for unemployment benefits. The director of the Ohio Department of Job and Family Services ("ODJFS") determined that Walburn quit with just cause and was entitled to unemployment benefits. USEC appealed, but the ODJFS affirmed this decision. When USEC appealed again, the director of the ODJFS transferred jurisdiction to the Commission. The Commission appointed a hearing officer to hold an evidentiary hearing on the matter.
 {¶ 5} At the hearing, Walburn testified that USEC instituted a new policy requiring security officers to respond to radio checks every half hour. The policy was instituted in response to reports the company had received of security officers sleeping on the job. The policy took effect on October 5, 2007. On that day, Walburn and another unarmed security guard, Charles Howell ("Howell"), were assigned to security at Portal D, an entrance to the USEC facility. Walburn checked in with shift commander Robert Rogers ("Rogers") between 6:35 a.m. and 7:00 a.m. Although Walburn knew about the radio check policy, he asked Rogers if he could check in sometime later that day because he was assigned to a busy portal. Rogers became angry and told Walburn that he would respond to all of the radio checks. When the 7:00 a.m. post check occurred, Walburn did not hear the call on his radio. Howell heard the call but did not respond because he was in the bathroom. Because they did not respond to the call, Rogers and another shift commander, Don Walters ("Walters"), came to confront them.
 {¶ 6} Walburn further testified that when the men arrived at Portal D, they were wearing firearms and surrounded him. Although he tried to explain that he simply did not hear the call, Rogers began "wildly swinging" his arms and moved so close to Walburn that "spittle from [Rogers's] mouth was hitting [him] in the face." Rogers told Walburn that *Page 4 
he would "take [him] out by any means necessary." Rogers did not draw his weapon. However, given Rogers's statement, the demeanor of both Rogers and Walters, and their possession of firearms, Walburn feared for his personal safety. Walburn told Rogers that he felt Rogers was "disciplining" him and repeatedly requested union representation.
 {¶ 7} Rogers testified that he had no discussion with Walburn between 6:35 a.m. and 7:00 a.m. After Walburn and Howell failed to respond to the 7:00 a.m. radio check, he and Walters went to Portal D to ensure their safety and to ensure that they understood the radio check requirement. According to Rogers, Walburn said that he was too busy to answer his radio. Walburn became upset, raising his voice and asking for union representation. In response, Rogers raised his voice to reiterate that the radio check was a job requirement, and that if Walburn failed to comply, Rogers would remove him from the job. Rogers never told Walburn he would "take [him] out by any means necessary[.]" As a shift commander, Rogers was required to carry a firearm, but he never drew his weapon or hinted toward doing so. Rogers remained four to five feet away from Walburn during their encounter. After Rogers left the portal, Walburn remained at work the rest of the day and responded to all subsequent radio checks.
 {¶ 8} At the hearing, Walters testified that he could not recall whether Walburn indicated that he had not heard the 7:00 a.m. radio check. Walters did recall Walburn stating that he was too busy to answer his radio. According to Walters, Walburn became agitated, and Rogers approached him "more directly" about following the job requirement. Walters testified that he thought at one point the distance between Rogers and Walburn may have been less than a foot. When asked if Rogers told Walburn that he "would take [Walburn] out by any means necessary," Walters could not recall the exact language *Page 5 
used. Walters did confirm that both he and Rogers carried weapons as a job requirement but neither reached for their firearm or referred to them in any manner during the encounter with Walburn.
 {¶ 9} In a letter dated October 14, 2007, Walburn tendered his resignation, effective October 17, 2007 — twelve days after the encounter with Rogers and Walters. Walburn alleged that he had been "working in a hostile workplace." He further stated that his encounter with Rogers and Walters left him "fearing for [his] very health and safety." A USEC Investigator, John Shewbrooks, Jr. ("Shewbrooks") investigated Walburn's allegation and concluded that the encounter between Walburn, Rogers, and Walters exhibited none of the characteristics of a hostile work environment. After his resignation, Walburn filed a grievance with his union, the Security Police and Fire Professionals of America Local 66.
 {¶ 10} The hearing officer reversed ODJFS's decision, finding that Walburn quit without just cause and was not entitled to unemployment benefits. The hearing officer determined that the greater weight of the evidence showed that Walburn quit due to his belief that Rogers and Walters threatened his health and safety. However, Walburn's belief was not that of a "reasonable rational person" because neither supervisor made any physical threat against him. Walburn "was merely informed that he had to perform the requirements of his job, answering a radio check every half hour, or he would have to find new employment." The hearing officer further concluded that Walburn acted unreasonably by quitting before filing his grievance.
 {¶ 11} Walburn filed a request for review of the hearing officer's decision with the Commission, which denied it. He then filed an appeal with the Pike County Court of *Page 6 
Common Pleas. After the court affirmed the hearing officer's decision, Walburn filed this appeal.
 II. Assignments of Error {¶ 12} Walburn assigns the following errors for our review:
 1. The Trial Court committed error when it affirmed the hearing officer's refusal to issue a subpoena for a witness whose testimony would have been favorable to Appellant. (Decision and Journal Entry of the Trial Court filed July 25, 2008, at p. 8) (See Appendix).
 2. The Trial Court committed error when it affirmed the hearing officer's refusal to issue a subpoena for documents that would have been favorable to Appellant. (Decision and Journal Entry of the Trial Court filed July 25, 2008, at p. 8) (See Appendix).
 3. The Trail [sic] court committed error when it affirmed the hearing officer's holding that Appellant should be denied benefits because he failed to file a grievance prior to quitting, the effect of which is to establish a per se rule. (Decision and Journal Entry of the Trial Court filed July 25, 2008, at p. 8-9) (See Appendix).
 {¶ 13} Walburn presents only one argument for his first and second assignments of error. App. R. 16(A)(7) requires separate arguments for each assignment of error. "While appellate courts may jointly consider two or more assignments of error, the parties do not have the same option in presenting their arguments." Keffer v. Cent. Mut. Ins.Co., Vinton App. No. 06CA652, 2007-Ohio-3984, fn. 2. Thus, we would be within our discretion to simply disregard Walburn's first and second assignments of error and summarily affirm the trial court's judgment with regard to them. App. R. 12(A)(2); Keffer at fn. 2. Nonetheless, we will review all of Walburn's arguments in the interest of justice.
 III. Standard of Review {¶ 14} "Unlike most administrative appeals where we employ an abuse of discretion standard, * * * our review of an appeal from the decision of the Commission is *Page 7 
identical to that of the common pleas court." Baird v. S. Ohio Med.Ctr., Scioto App. No. 04CA2939, 2004-Ohio-5888, at ¶ 7. We must affirm the Commission's decision unless we find it to be unlawful, unreasonable, or against the manifest weight of the evidence.Tzangas, Plakas Mannos v. Ohio Bur. of Emp. Servs., 73 Ohio St.3d 694,696, 1995-Ohio-206, 653 N.E.2d 1207.
 {¶ 15} In making this determination, we must give deference to the Commission in its role as finder of fact. We may not reverse its decision simply because reasonable minds might reach different conclusions. Irvine v. State Unemployment Comp. Bd. of Rev. (1985),19 Ohio St.3d 15, 18, 482 N.E.2d 587. On close questions, where the Commission might reasonably decide either way, we have no authority to upset its decision. Id., citing Charles Livingston Sons, Inc. v.Constance (1961), 115 Ohio App. 437, 438, 185 N.E.2d 655. "Instead, our review is limited to determining whether the Commission's decision is unlawful, unreasonable, or totally lacking in competent, credible evidence to support it." Baird at ¶ 8, citing Irvine at 18.
 IV. Issuance of Subpoenas {¶ 16} In his first assignment of error, Walburn contends that the hearing officer unlawfully denied him a full and fair hearing by refusing to issue a subpoena for Howell's testimony. In his second assignment of error, Walburn contends that the hearing officer unlawfully denied him a full and fair hearing by refusing to issue a subpoena for various documents Shewbrooks consulted in drafting his report. Because these assignments of error present similar issues, we address them together.
 {¶ 17} R.C. 4141.281(C)(2) provides that principles of due process in administrative hearings apply to all hearings conducted under the Commission's authority *Page 8 
and that:
 In conducting hearings, all hearing officers shall control the conduct of the hearing, exclude irrelevant or cumulative evidence, and give weight to the kind of evidence on which reasonably prudent persons are accustomed to rely in the conduct of serious affairs. Hearing officers have an affirmative duty to question parties and witnesses in order to ascertain the relevant facts and to fully and fairly develop the record. Hearing officers are not bound by common law or statutory rules of evidence or by technical or formal rules of procedure.
Ohio Administrative Code section 4146-7-02(A) similarly requires hearing officers to "take any steps consistent with the impartial discharge of their duties which appear reasonable and necessary to ascertain all relevant facts and to render a fair and complete decision on all issues which appear to be presented." Furthermore, the hearing officer may require the attendance of witnesses and the production of other evidence as "deemed necessary to present fully and adequately any issue to be determined." Id. at (F)(1). The hearing officer may also adjourn or continue a hearing to another time or place on his own motion, "upon the showing of good cause by an interested party, or whenever it appears that such action is necessary to afford the claimant or employer a reasonable opportunity for a fair hearing[.]" Id. at (H).
 {¶ 18} Because of the supervisory nature of these responsibilities, we believe they are best reviewed under an abuse of discretion standard. See Gregg v. SBC Ameritech, Franklin App. No. 03AP-429, 2004-Ohio-1061, at ¶ 22. See, also, by way of analogy, a trial court's discretion to exercise supervisory powers such as granting or denying continuances,State v. Nayer, Lawrence App. No. 07CA6, 2007-Ohio-6092, at ¶ 29, citingState v. Jones, 91 Ohio St.3d 335, 342, 2001-Ohio-57, 744 N.E.2d 1163, and dealing with cumulative evidence, State v. Jewell (Aug. 22, 1990), Vinton App. No. CA448, 1990 WL 127049, at *9. *Page 9 
 {¶ 19} An abuse of discretion involves far more than a difference in opinion. "The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an `abuse' in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." State v. Jenkins
(1984), 15 Ohio St.3d 164, 222, 473 N.E.2d 264, certiorari denied (1985), 472 U.S. 1032, quoting Spalding v. Spalding (1959),355 Mich. 382, 384-385, 94 N.W.2d 810; Huffman v. Hair Surgeon, Inc. (1985),19 Ohio St.3d 83, 87, 482 N.E.2d 1248.
 {¶ 20} In this case, Walburn asked the hearing officer to issue subpoenas for witnesses and a list of documents. Because Walburn failed to timely file the subpoenas with the Commission, they were not issued or served. In a footnote in his appellate brief, Walburn contends that he timely filed the subpoenas. However, because he did not contest this finding at the hearing and because he does not raise it as a separate assignment of error, that finding has become "law of the case," and we take it as a fact. At the conclusion of the hearing, the hearing officer asked Walburn who the witnesses were and what they would testify to at the hearing. Regarding Howell, Walburn responded that "Mr. Howell was the other guard who was present. He was an eye witness to what, to what happened on 10/5 of 07' [sic]." The hearing officer noted that Mr. Howell "would probably be * * * [a] relevant witness since he was present" but felt that his testimony might be repetitious and was unnecessary for a decision. Walburn objected to this ruling.
 {¶ 21} However, Walburn did not proffer into the record what he believed Howell's *Page 10 
testimony would have shown. Likewise, his appellate brief does not identify any specific evidence that should have been admitted. Instead, Walburn points to contradictions between his testimony and that of Rogers and Walters as to (1) whether Rogers threatened him, (2) the distance between himself and Rogers, and (3) Rogers's demeanor. After quoting portions of a statement Howell made, included in the record through Shewbrooks's report, Walburn states that "Charles Howell could provide eyewitness testimony" on these contradictions. He then summarily concludes that Howell's testimony "would have been favorable" to him. Given the untimely nature of his request for a subpoena and the minimal nature of his proffer, we cannot say the hearing officer abused his discretion in denying the request. Accordingly, we overrule his first assignment of error.
 {¶ 22} At the conclusion of the hearing, Walburn also asked the hearing officer to issue a subpoena for the production of documents. Walburn stated:
 Attached to [Shewbrooks's] report at the end on pages 9 and 10 are a whole list of documents, one of which is a several hundred page document that, that talks about * * * a working environment that the guards were in in the couple of years prior to this incident. I think that report is extremely relevant. Mr. Shewbrooks looked at it in formulating his opinion. His opinion is also part of the state record. I [sic] and that was one of the documents we subpoenaed. * * * I think his report would be relevant. We would like at least like to get those subpoenaed documents and submit them to the court for there [sic] evaluation.
The hearing officer felt he did not need the documents to make a decision. Walburn responded, "Okay well will note that for the record."
 {¶ 23} Even if we presume that this statement constitutes an objection to the hearing officer's ruling, Walburn again failed to proffer into the record what he believed these documents would have established. Likewise, his appellate brief does not identify *Page 11 
any specific evidence that should have been admitted. We cannot ascertain what documents Walburn in fact seeks. The copy of Shewbrooks's report in the record does not contain a list of documents he consulted in preparing the report. While the record does contain a letter from Walburn to the Commission requesting a subpoena for certain documents in Shewbrooks's possession, we cannot determine if this list came from Shewbrooks's report. Furthermore, we note that Shewbrooks was present at the hearing. Walburn could have questioned him regarding the documents sought but did not do so. Again, given the untimely nature of Walburn's request for a subpoena and the minimal nature of his proffer, we cannot say the hearing officer abused his discretion in denying the request. Accordingly, we overrule Walburn's second assignment of error.
 V. Just Cause to Quit {¶ 24} Walburn is not eligible for unemployment benefits if he quit his job without just cause. R.C. 4141.29(D)(2)(a). The claimant has the burden of proving the existence of just cause for quitting work.Irvine, supra, at 17. Just cause "is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." Id., quoting Peyton v. Sun T.V. Appliances (1975), 44 Ohio App.2d 10, 12, 335 N.E.2d 751. The determination of whether just cause exists "necessarily depends upon the unique factual considerations of the particular case." Id. In his third assignment of error, Walburn contends that the hearing officer determined that he quit without just cause solely because he failed to file a grievance with his collective bargaining unit prior to resigning. He argues this decision unlawfully created a per se rule requiring employees to take such action before quitting in order to be eligible for unemployment benefits.
 {¶ 25} "A reasonable fear for one's personal safety is a proper reason for leaving *Page 12 
employment." Village of Chesapeake v. Ellis (Nov. 24, 1993), Lawrence App. No. 93 CA 3, 1993 WL 491324, at *2, citing Taylor v. Bd. ofReview (1984), 20 Ohio App.3d 297, 485 N.E.2d 827. Generally employees "must make reasonable efforts to attempt to solve [a] problem before leaving their employment[,]" or else they risk a finding that they quit without just cause. Cline v. State (Sept. 15, 1999), Washington App. No. 98CA5, 1999 WL 768349, at *3, quoting DiGiannantoni v. Wedgewater AnimalHosp., Inc. (1996), 109 Ohio App.3d 300, 307, 671 N.E.2d 1378. However, "an employee with a reasonable fear for [his] personal safety * * * `cannot be expected to remain on the job until an actual physical assault takes place.'" Id., quoting Taylor at 299.
 {¶ 26} In this case, Walburn contends that the hearing officer failed to analyze the factual circumstances of his case and instead denied him unemployment benefits simply because he waited to file a grievance until after he quit. Walburn misreads the hearing officer's decision. The hearing officer determined that Walburn quit his job due to his belief that his health and safety were threatened on October 5, 2007. While a "reasonable fear for one's personal safety is a proper reason for leaving employment[,]" an unreasonable fear is not. The hearing officer specifically found that Walburn's fear "was not that of a reasonable rational person" because Rogers and Walters made no physical threat against him. The hearing officer then determined that Walburn also "did not act as a reasonably prudent person in quitting first and then filing a grievance." Based on these findings, the hearing officer lawfully concluded that Walburn quit without just cause. Accordingly, we overrule Walburn's third assignment of error.
 {¶ 27} Having overruled each of the assignments of error, we affirm the trial court's judgment. *Page 13 
 JUDGMENT AFFIRMED. *Page 14 JUDGMENT ENTRY
It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pike County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J. McFarland, J.: Concur in Judgment and Opinion. *Page 1